UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| CECIL H. PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:17-CV-213-DCP |
| | ) | |
| CARTER COUNTY, TENNESSEE, and | ) | |
| BARNEY BROWN, individually and in his | ) | |
| official capacity as Constable for Carter County, | ) | |
| Tennessee, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636(c), Rule 73(b) of the Federal Rules of Civil Procedure, and the consent of the parties, for all further proceedings, including entry of judgment [Doc. 23].

Now before the Court is a Motion for Summary Judgment [Doc. 24], filed by Defendant Carter County, Tennessee ("Defendant Carter County"). The Motion is ripe and ready for adjudication. Accordingly, for the reasons explained below, the Court hereby **GRANTS** Defendant Carter County's Motion [**Doc. 24**].

### I.    BACKGROUND

The Court will begin with the allegations in the Complaint and then turn to the parties' statement of undisputed facts.

#### A.    Allegations in the Complaint

The Complaint [Doc. 1] in this matter was filed on November 22, 2017. The Complaint states that Defendant Barney Brown was a constable of Carter County and that he was an elected official and policy maker for Carter County. [Doc. 1 at ¶ 3]. The Complaint alleges that on

December 2, 2016, Plaintiff was traveling on US-19E when he encountered Defendant Brown. [*Id.* at ¶ 4]. Defendant Brown stopped Plaintiff for an alleged traffic violation. [*Id.* at ¶ 5]. The Complaint states that Defendant Brown was driving what appeared to be a patrol car, and he identified himself as a constable, although he had no credentials and wore civilian attire. [*Id.* at ¶ 6].

The Complaint alleges that during the stop, Defendant Brown informed Plaintiff that he could write him a ticket, and Plaintiff advised Defendant Brown to "write the ticket[,] and I will be on my way." [*Id.* at ¶ 7]. Defendant Brown responded that he could take Plaintiff to jail. [*Id.* at ¶ 8]. Plaintiff grew concerned and asked to speak to Defendant Brown's supervisor. [*Id.* at ¶ 9]. The Complaint states that Defendant Brown's demeanor changed drastically and that Defendant Brown informed Plaintiff that he was a constable and stated, "You don't think I got the power! I got the power." [*Id.* at ¶ 10]. Plaintiff began to fear for his safety and attempted to roll up the window, at which point, Defendant Brown drew a handgun and placed it on Plaintiff's head. [*Id.* at ¶ 11]. Plaintiff placed his hands in the air and informed Defendant Brown that he would do anything Defendant Brown said. [*Id.* at ¶ 12].

The Complaint states that Defendant Brown ordered Plaintiff to get his registration, and Plaintiff stated that he could not do so because the way he was sitting and asked to exit the car. [*Id.* at ¶ 13]. Defendant Brown held Plaintiff at gun point for several minutes, and during that time, Plaintiff looked for an opportunity to flag down any car that might pass. [*Id.* at ¶ 14]. Plaintiff saw an oncoming vehicle, and ran into the roadway, shouting for help and asking for someone to call 911. [*Id.* at ¶ 15]. Defendant Brown ordered Plaintiff to return to the roadside, and Plaintiff continued to stay in the roadway, waving his arms and screaming for help. [*Id.* at ¶ 16]. Defendant Brown entered Plaintiff's vehicle, removed the keys from the ignition, threw

Plaintiff's keys to the grass, and then left the scene. [*Id.* at ¶ 17]. Once Defendant Brown left the scene, Plaintiff used his cell phone to call for help. [*Id.* at ¶ 18].

The Complaint avers that the Carter County Sherriff's Department responded to the call, and Plaintiff was informed that because the incident involved another officer, the case would be investigated by the Tennessee Bureau of Investigation ("TBI"). [*Id.* at ¶ 19]. The Complaint alleges that a few days later, Plaintiff was contacted by an agent with the TBI, and that on March 13, 2017, the Carter County grand jury indicted Defendant Brown for aggravated assault and official oppression. [*Id.* at ¶¶ 20-21].

With respect to Defendant Carter County, Plaintiff alleges that it was deliberately indifferent for reinstating Defendant Brown as a constable (Count Five) and that it was deliberately indifferent by failing to train constables (Count Six). [*Id.* at ¶¶ 34-43].

**B.    Factual Background**

The following facts are taken from the parties' briefs, unless otherwise noted. On November 23, 2009, Defendant Brown executed an Affidavit for Election to the Office of Constable, wherein he swore that he had not been convicted in any federal or state court of a felony. [Doc. 24-1]. Subsequently, on August 5, 2010, Defendant Brown won the election to the office of Constable for a four-year term. [Doc. 24-2]. The parties do not appear to dispute that Defendant Brown's term began on September 1, 2010.

On September 20, 2010, the Carter County Commission ("County Commission") held a meeting, and the minutes of the meeting reflect that County Commission accepted Defendant Brown's resignation. [Doc. 24-3 at 1]. Specifically, the county attorney reported that Defendant Brown's resignation was official after it was revealed that Defendant Brown had a prior felony conviction. [*Id.* at 2]. Later, on October 18, 2010, the County Commission held another meeting,

wherein Defendant Brown announced that he had submitted his resignation after being accused of a felony on the advice of his attorney. [Doc. 24-4 at 3]. He stated that any trouble he had been in occurred when he was a teenager and that if reinstated, he would protect and serve the people of the Second District to the best of his ability. [*Id.*]. The County Commission voted to reelect Defendant Brown as the Constable of the Second District. [*Id.* at 4].

According to Defendant Carter County, at the time of Defendant Brown's reappointment, the exact circumstances of his felony were unclear. Thereafter, it was determined that in 1959, Defendant Brown was convicted of breaking and entering and larceny. [Doc. 24-5]. His jail sentence of five years was suspended as long as he complied with the rules of probation, paid restitution, obtained a job and remained lawfully employed, and was home each night at 9:00 p.m. [*Id.*].

On August 7, 2014, Defendant Brown was elected to a new, four-year term, which began on September 1, 2014. [Doc. 24-6]. Subsequently, on December 2, 2016, Defendant Brown performed a traffic stop on Plaintiff while Plaintiff was traveling on U.S. Highway 19E. [Doc. 24-7]. The actions that occurred during the stop serve as the basis for Plaintiff's Complaint.

## II.     POSITIONS OF THE PARTIES

As mentioned above, Plaintiff alleges two counts against Defendant Carter County: (1) deliberate indifference for reinstating Defendant Brown, and (2) deliberate indifference for failing to train Defendant Brown. Defendant Carter County moves for summary judgment, arguing that it is entitled to judgment as a matter of law as to both counts.

For grounds, Defendant Carter County states that its 2010 decision to reinstate Defendant Brown was not deliberately indifferent to Plaintiff's rights and that there is no causal link between the 2010 reinstatement and the alleged constitutional violation in 2016. Further, Defendant Carter

County argues that it has no duty to train a constable because a constable is a state official; that even if Defendant Brown was a county official, it has no duty to train him because he is responsible for his own training; and that Defendant Brown has obtained the training that is required by law. Finally, Defendant Carter County argues that Plaintiff has sued Defendant Brown in his official capacity, which is redundant because Carter County is already a Defendant in this matter.

Plaintiff filed a Response [Doc. 26], arguing that the Motion should be denied, or in the alternative, that the case should be stayed until the criminal charges against Defendant Brown are resolved.[1] Plaintiff argues that the County Commission took action to appoint Defendant Brown, despite his previous resignation. Plaintiff argues that Defendant Carter County exercised decision-making authority over the constable, regardless of whether the constable itself is a state or county officer. Plaintiff asserts that Defendant Carter County permitted Defendant Brown to occupy his office in direct violation of Tennessee Code Annotated § 8-10-102(a)(1)(D). Plaintiff argues that the reason the Tennessee General Assembly requires that constables have no prior felony convictions is to prevent criminal behavior, such as that which was experienced by Plaintiff. Plaintiff asserts that Defendant Carter County intentionally ignored the requirements of Tennessee Code Annotated § 8-10-102(a)(1)(D), and therefore, was deliberatively indifferent to the rights of citizens. In the alternative, Plaintiff states that pursuant to Federal Rule of Civil Procedure 56(d), he needs additional facts and that he cannot conduct discovery because Defendant Brown is currently facing criminal charges.

Defendant Carter County filed a Reply [Doc. 30], maintaining that there is no causal link between the 2010 reinstatement of Defendant Brown and Plaintiff's 2016 allegations of harm.

---

[1] The Court notes that on August 28, 2018, the undersigned held a Scheduling Conference with the parties. During the Scheduling Conference, Plaintiff stated that his request for a stay is moot given that the Court set the trial date "far out."

Defendant Carter County asserts that Plaintiff failed to respond to its argument that there is no causal link between the reinstatement and the alleged harm, and therefore, Plaintiff's claim should be dismissed.

In addition, Defendant Carter County argues that it was not deliberately indifferent in its decision to reinstate Defendant Brown because Plaintiff cannot establish that Defendant Brown's background shows that he was highly likely to inflict the particular harm that later occurred. Further, Defendant Carter County argues that with respect to Plaintiff's failure to train allegations, Defendant Brown had more training than what was legally required. In the alternative, Defendant Carter County maintains that it had no duty to train him, even if Defendant Brown is deemed a county official.[2]

Plaintiff filed a Response [Doc. 32] to Defendant Carter County's Reply. Plaintiff asserts that the facts of Defendant Brown's criminal case are inextricably connected to the underlying facts of the instant matter. Plaintiff states that he is incapable of obtaining information from Defendant Brown that would allow him to address the issues cited by Defendant Carter County. Plaintiff states that pursuant to Tennessee Code Annotated § 8-10-101, the County Commission has the authority to abolish or retain the office of constable. Plaintiff argues that the Carter County Commission intentionally violated the statute by reinstating Defendant Brown for the office of constable because he is a convicted felon. Plaintiff argues that with respect to his allegations about

---

[2] The Court notes that Plaintiff filed a Response [Doc. 32] to Defendant Carter County's reply, asserting that the facts of Defendant Brown's criminal case are inextricably connected to the underlying facts of the instant matter and that Plaintiff is incapable of obtaining information from Defendant Brown that would allow him to address the issues cited by Defendant Carter County. Plaintiff further argued that Defendant Brown's deposition was necessary with respect to the failure to train allegations in order to determine the extent of Defendant Brown's training. Defendant moved to strike Plaintiff's response, which the Court granted [Doc. 40] because Plaintiff failed to respond to Defendant Carter County's motion to strike and the filing was in violation of Local Rule 7.1(d).

the failure to train, Defendant Brown's deposition is necessary in order to determine the extent of his training. Plaintiff explains that Defendant Brown's deposition at this time is problematic due to his pending criminal trial.

## III. STANDARD OF REVIEW

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n. 2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law. *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the finder of fact. *Anderson*, 477 U.S. at 250. The Court does not weigh the evidence or determine the truth of

the matter. *Id.* at 249. Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson,* 477 U.S. at 250.

## IV. ANALYSIS

As mentioned above, Plaintiff alleges two counts against Defendant Carter County: (1) deliberate indifference for reinstating Defendant Brown in 2010, and (2) deliberate indifference for failing to train constables. Defendant Carter County has moved for summary judgment on both counts. Further, Defendant Carter County requests that the claims against Defendant Brown in his official capacity be dismissed as they are duplicative of the claims against it.

The Court will address these arguments separately.

### A. Defendant Brown's Reinstatement

Defendant Carter County asserts that Plaintiff's deliberate indifference for reinstating Defendant Brown in 2010 should be dismissed as a matter of law. Defendant Carter County argues that Plaintiff has not established a causal link between Defendant Brown's reinstatement and the violation of Plaintiff's constitutional rights. In addition, Defendant Carter County asserts that the reinstatement decision did not make it highly likely that Defendant Brown would have inflicted the particular injuries alleged in the instant lawsuit.

Plaintiff responds that Defendant Carter County appointed Defendant Brown despite that he had once resigned and in violation of Tennessee Code Annotated § 8-10-102(a)(1)(D). Plaintiff argues that the County Commission was clearly aware of the disqualifying circumstance and that

the purpose of Tennessee Code Annotated § 8-10-102(a)(1)(D) is to prevent criminal behavior, such as the behavior that Plaintiff experienced.

It is well established that a plaintiff cannot prevail against a municipality under § 1983 based on the conduct of an employee. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). "[R]espondeat superior is not available as a theory of recovery under section 1983." *Monroe v. McNairy Cty., Tenn.*, 850 F. Supp. 2d 848, 873 (W.D. Tenn. 2012) (quoting *Vereecke v. Huron Valley Sch. Dist.,* 609 F.3d 392, 403 (6th Cir. 2010)) (other citations omitted). In order to establish liability on part of the municipal entity for a violation of § 1983, a plaintiff must show: (1) deprivation of a constitutional right, and (2) that the municipal entity is responsible for that deprivation. *Doe v. Claiborne Cty. Bd. Of Educ.*, 103 F.3d 495, 505-06 (6th Cir. 1996) (citing *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). The plaintiff must be able to "show a direct causal link between the custom and the constitutional deprivation; that is, she must show that the particular injury was incurred *because* of the execution of that policy." *Doe*, 103 F.3d at 508 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)) (other citations omitted) (emphasis in *Doe*). In other words, the constitutional violation "must be closely related to the ultimate injury." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989).

The Court agrees with Defendant Carter County that there is no direct causal link between the reinstatement of Defendant Brown in 2010 and the constitutional violations that Plaintiff alleges in this case.[3] In his Complaint, Plaintiff alleges that after Defendant Brown resigned, the

---

[3] The Court notes that the minutes from the County Commission's meeting reflect that the "[c]ounty [a]ttorney advised the Commissioners to 'reelect' Constable Brown as opposed to 'reinstating' him to avoid any legalities due to the fact that [the] position had been advertised." [Doc. 24-4 at 3-4]. Each Commissioner voted on his/her choice for Constable, and Defendant Brown received a majority of the votes. [*Id.* at 4]. The minutes conclude, "Barney Brown was reelected Constable of the 2nd District." [*Id.*]. Thus, while the minutes reflect that Defendant Brown was "reelected," the Court will use the term "reinstated" because both parties state that Defendant Brown was reinstated.

9

County Commission reappointed him and that the County Commission's actions resulted in the Defendant Brown coming into contact with other individuals. Here, Defendant Brown was reinstated in 2010, and his four-year term in office expired on August 31, 2014. He was then elected by the voters of Carter County to a new, four-year term beginning on September 1, 2014. Plaintiff asserts that Defendant Brown's reinstatement was in violation of Tennessee Code § 8-10-102(a)(1)(D), which states that in order to qualify for an election for constable, an individual cannot have a felony conviction. Given that he was elected after the County Commission's reinstatement, however, the Court finds Plaintiff's argument not well taken. In addition, Plaintiff generally argues that Defendant Carter County's continued retention of Defendant Brown as constable and in violation of state law placed persons in contact with Defendant Brown. The Court agrees with Defendant Carter County that a violation of state law does not necessarily equate to a violation of constitutional rights. *Monroe v. McNairy Cty., Tenn.,* 520 F. Supp. 2d 917, 920 (W.D. Tenn. 2007) ("Violations of state law alone are not sufficient to state a § 1983 claim.").[4] Accordingly, based on these facts, the Court does not find that Defendant Carter County's reinstatement of Defendant Brown was the moving force behind the constitutional violations.

In any event, even if a direct causal link were established, the Court does not find that the decision to reinstate Defendant Brown was deliberately indifferent. Defendant Carter County has compared the facts in this case to lawsuits against municipalities for improper hiring decisions.

---

[4] The Court notes that there are other remedies for such violations of state law as alleged in the Complaint, such as quo warranto actions or ouster suits. *See* Tennessee Code Annotated § 8-47-101; *State ex rel. Estes v. Hicks*, No. E1999-01603-COA-R3CV, 2000 WL 336530, at *1 (Tenn. Ct. App. Mar. 31, 2000); Tenn. Op. Att'y Gen. No. 99-025, 1999 WL 98347 (Feb. 16, 1999); *see also Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc) ("A state ought to follow its law, but to treat a violation of state law as a violation of the Constitution is to make the federal government the enforcer of state law. State rather than federal courts are the appropriate institutions to enforce state rules.").

The Court agrees that this is a helpful comparison of analyzing the facts in this case. For instance, the Supreme Court explained as follows:

> Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record, however, there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. Every injury suffered at the hands of a municipal employee can be traced to a hiring decision in a "but-for" sense: But for the municipality's decision to hire the employee, the plaintiff would not have suffered the injury. To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). The Supreme Court continued, "[A] finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. The Court further explained, "The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." *Id.*

In the present matter, Defendant Brown was convicted of a felony of breaking and entering and larceny in 1959 at the age of seventeen (17) years old. The Court agrees with Defendant Carter County that no reasonable person could conclude that Defendant Brown's conviction (51 years ago) would have made it highly likely that Defendant Brown would inflict the particular injury (excessive force and false arrest/seizure) allegedly suffered by Plaintiff. Accordingly, the Court finds that there are no genuine issues of material fact as to Count Five, and the Court will grant summary judgment in favor of Defendant Carter County on this claim.

## B. Failure to Train

The Complaint alleges that Defendant Carter County failed to "adequately train and/or supervise Constable[s], including Defendant Brown as to proper policies, procedures, practices, customs, edicts as to the use of force that subsequently resulted in the use of excessive force and or the false arrest of Plaintiff Perry" and that such actions "amount to deliberate indifference to the rights of Plaintiff Perry to be free from excessive force and/or false arrest." [Doc. 1 at 7]. As mentioned above, Defendant Carter County argues that it has no duty to train a constable because a constable is a state official; that even if Defendant Brown was a county official, it has no duty to train him because he is responsible for his own training; and that, in any event, Defendant Brown has obtained the training that is required by law.

The Court need not address whether Defendant Carter County has a duty to train constables, and specifically Defendant Brown, because Plaintiff's argument in this regard is undeveloped. A plaintiff may bring a § 1983 claim based on inadequacy of law enforcement training only if the alleged failure to train equates to deliberate indifference to rights of individuals with whom the officers come into contact. *See Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference arises if the state actors should have known, either based on a history of constitutional violations or because such likelihood was obvious, that constitutional rights violations were likely absent better training. *Ellis ex rel. Pendergrass v. Cleveland Mun. School Dist.,* 455 F.3d 690, 700-01 (6th Cir. 2006). Here, Plaintiff has not proffered sufficient evidence to raise issues of fact as to Defendant Carter County's failure to train constables in the use of force. Assuming there was a duty to do so under these facts,[5] Plaintiff has not produced evidence of

---

[5] In *Boswell v. Powell*, the Tennessee Supreme Court held, "We think, however, that a sheriff and constable while elected by the voters of the particular county, are both essentially state officers. The chief duties of both are to enforce the laws of the state. Both are constitutional officers." 43 S.W.2d 495, 495 (Tenn. 1931) (citing Tenn. Const. art. 7, § 1; art. 6, § 15). In 1964,

12

Defendant Carter County's failure to act in response to repeated complaints. See *Burgess v. Fischer*, 735 F.3d 462 (6th Cir. 2013) (citing *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). Moreover, while it is arguably "inherently foreseeable" that failure to properly train constables in the appropriate use of force could result in excessive force violations, Plaintiff neither produces evidence identifying the inadequacy of the use of force training actually provided nor attempts to show a link between his allegations of failure to train and the conduct at issue in this case.

Here, Defendant Carter County submitted the Declaration of Defendant Brown [Doc. 24-11], attesting that the training certificates submitted therewith accurately reflect the training he received from 2010 to the date of the incident on December 2, 2016. [*Id.* at ¶ 4]. Specifically, the certificates provide as follows:

---

the Supreme Court reiterated that a constable is a constitutional officer. *Glasgow v. Fox*, 383 S.W.2d 9, 11 (Tenn. 1964) (citing *Boswell*, 43 S.W.2d at 495) (other citations omitted). Specifically, in *Glasgow*, the Tennessee Supreme Court relied on Article 6, § 15 of the Tennessee Constitution, which provided, "There shall be two Justices of the Peace and one Constable elected in each district by the qualified voters therein, except districts including County towns, which shall elect three Justices and two Constables." *Id*. at 10 (quoting Art. 6, § 15) (emphasis omitted). The Court also reasoned that statutes prescribe constables' qualifications, terms of office, duties, and compensation, and constables take an oath to serve the state. *Id*. (emphasis omitted). Further, the Court reasoned, "A constable performs no part of any function of county or city government." *Id.* at 13.

In 1978, however, the Tennessee Constitution was amended, and as a result of the amendments, Article 6, § 15 was repealed. Tenn. Op. Att'y Gen. No. 91-70, 1991 WL 535152, at *2 (Aug. 1, 1991). According to the Tennessee Attorney General, constables are "no longer constitutional officers" and that "[t]he members of the Limited Constitutional Convention of 1977 viewed constables as county officers." *Id.* The Tennessee Attorney General opined that counties could be held liable under 42 U.S.C. § 1983 for constables' actions. *Id.* at *1. Given that Article 6, § 15 was repealed, which *Glasgow* relied on, in part, it is not clear whether counties have a duty to train constables. Further, state law provides, "Each constable elected under Tennessee Code Annotated § 8-10-101 shall complete forty (40) hours of in-service course time for each twelve-month period during which the constable holds office, beginning on the date the constable is sworn into office." Tenn. Code Ann. § 8-10-202.

13

1. Certification of Completion for First Responders Suspicious Substance Training dated August 10, 2010;

2. Certificate from the Unicoi County Sherriff's Department for completing a forty-hour P.O.S.T. (Peace Officer Standards & Training Commission) approved training course titled "General in Service Training," which included courses on firearms, child abuse, and E.V.O.C., (Emergency Vehicle Operations Course) dated May 19, 2011;

3. Certificate of Training from the Carter County Constables Association, stating that Defendant Brown completed forty (40) hours of training titled, "General Law Enforcement Procedures," which included classes on E.V.O.C., child sexual abuse training, and firearms, dated August 2012;

4. Certificate of Training from the Carter County Constables Association, stating that Defendant Brown completed forty (40) hours of training titled, "General Law Enforcement Procedures," which included classes on E.V.O.C., child sexual abuse training, mental illness, domestic violence, and firearms, dated June 2013;

5. Certificate of Training from the Carter County Constables Association, stating that Defendant Brown completed forty (40) hours of training titled, "General Law Enforcement Procedures," which included classes on E.V.O.C., child sexual abuse training, mental illness, domestic violence, and firearms. The class included sixteen (16) other topics, and the certificate is dated September 2014;

6. Certificate of Completion from the Tennessee Emergency Management Agency for successfully completing a forty-hour course on hazardous materials awareness, dated February 23, 2015;

7. Certificate of Training from the Carter County Constables Association, stating that Defendant Brown completed a forty-hour, in-service class, which included courses on E.V.O.C., child sexual abuse training, mental illness, domestic violence, firearms, and thirteen (13) other topics, dated August 2015; and

8. Certificate of Training from the Carter County Constables Association, stating that Defendant Brown completed a forty-hour in-service training class, which included courses on E.V.O.C., firearms, child sexual abuse, mental illness, active shooter, buildings search, interview and interrogation, along with other special topics. The training was from August 8 to August 17, 2016.

[Doc. 24-11 at 2-9].

In response to Defendant Carter County's properly supported Motion for Summary Judgment, Plaintiff has relied merely on allegations and arguments, which are insufficient. Plaintiff has presented no facts, and has not even conducted discovery designed to uncover facts supporting his allegations. *See* [Doc. 27 at ¶¶ 7-8] (requesting that the Court deny Defendant's motion, or in the alternative, defer considering the motion to allow the parties to engage in discovery after Defendant Brown's criminal proceedings are resolved).[6] Plaintiff instead relies on speculative, unsupported allegations concerning lack of training, which does not amount to a genuine issue of material fact. *Harvey v. Campbell Cty., Tenn.*, 453 F. App'x 557, 565 (6th Cir. 2011) ("[Plaintiffs] rely instead on speculative, unsupported allegations to create metaphysical doubt, which clearly does not amount to a genuine issue of material fact.") (Citing *Matsushita*

---

[6] Federal Rule of Civil Procedure 56(d) is the proper procedure to be followed when a party concludes that additional discovery is necessary to respond to a motion for summary judgment. Under Rule 56(d), "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). Courts have explained that "Rule 56 also requires that 'a party making such a filing indicate to the district court its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information.'" *Williams v. Goodyear Tire & Rubber Co.*, No. 11-2035-STA, 2012 WL 1228860, at *2 (W.D. Tenn. Apr. 11, 2012) (quoting *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000)). "The Sixth Circuit has held that it is not an abuse of discretion for the district court to deny the Rule 56 request for discovery when the party "makes only general and conclusory statements [in its affidavit] regarding the need for more discovery and does not show how an extension of time would have allowed information related to the truth or falsity of the [claim] to be discovered." *Id.* (quoting *Ironside v. Simi Valley Hosp.*, 188 F.3d 350, 354 (6th Cir.1999)) (brackets in *Williams*).

Not only did Plaintiff fail to file an affidavit or declaration, he did not explain his need for such discovery or what material facts he hopes to uncover. Further, the Court notes that during the Scheduling Conference in this matter, Defendant Brown's attorney reported to the Court that Defendant Brown's criminal trial was scheduled for February 5, 2019. The Court is not sure if the parties have proceeded with Defendant Brown's deposition, but in any event, no party has filed a supplemental brief relating to such discovery and the results thereof.

*Elec. Indus. Co.,* 475 U.S. at 586). Given that the alleged failure to train is asserted in only the most conclusory and legally insufficient manner, this claim must be **DISMISSED**.

      **C.**      **Official Capacity Claim**

Finally, Defendant Carter County argues that Plaintiff has sued Defendant Brown in his official capacity, which is redundant because Carter County is already a Defendant in this matter.

As an initial matter, the Court notes that this position first appears inconsistent with Defendant Carter County's claim that Defendant Brown is a state official for whom it had no duty to train. *See* [Doc. 25 at 14-21]. However, Defendant Carter County ultimately maintains that whether Defendant Brown is considered a state official or a county official, it has no duty to train constables. [*Id.* at 24]. For purposes of the official capacity claim, Defendant Carter County asserts that "[t]o the extent that [Plaintiff] is suing [Defendant] Brown in his official capacity as a county official of Carter County, then that claim should be dismissed as redundant . . ." [*Id.*].[7]

Section 1983 claims may be dismissed against government entity officials as redundant when the plaintiff also sues the government entity. *Foster v. Michigan*, 573 F. App'x 377, 389–90 (6th Cir. 2014) ("Where the entity is named as a defendant, an official-capacity claim is redundant."). Further, Plaintiff did not respond to Defendant Carter County's argument. Accordingly, the Court **DISMISSES** the claims against Defendant Brown in his official capacity.

---

[7] In setting forth the basis for the official capacity claim, Plaintiff alleges that "Defendant Brown is an elected official and is a policy maker for the Defendant Carter County, Tennessee." [Doc. 1 at ¶ 3].

## V. CONCLUSION

Accordingly, for the reasons explained above, Defendant Carter County's Motion for Summary Judgment [**Doc. 24**] is **GRANTED**.

**IT IS SO ORDERED**.

ENTER:

Debra C. Poplin
United States Magistrate Judge